AO-106 (Rev: 06/09)-Application for Search Warrant

# FILED

## UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

AUG 21 2023

Mark C. McCartt, Clerk
U.S. DISTRICT COURT

| In the Matter of the Search of | ) |
|---|---|
| BLACK 2022 BMW, MODEL COUPE, | ) |
| VIN: WBA53AK08N7K12947 AND THE | ) |
| DEVICE LISTED ON ATTACHMENT A, | ) |
| CURRENTLY IN THE POSSESSION OF | ) |
| BELL'S WRECKER SERVICE, LOCATED AT | ) |
| ROUTE 2, BOX 110, HWY 169 & WATOVA, | ) |
| NOWATA, OKLAHOMA  74048 | ) |

Case No. 23mJ-448-JFJ

**FILED UNDER SEAL**

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment "A"

located in the ___Northern___ District of ___Oklahoma___, there is now concealed *(identify the person or describe the property to be seized):*

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| **18 U.S.C. § 471** | **Obligations or Securities of the United States** |
| **18 U.S.C. § 472** | **Uttering Counterfeit Obligations or Securities** |

The application is based on these facts:

**See Affidavit of Special Agent Robert W. Idoux, attached hereto.**

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Robert W. Idoux
*Printed name and title*

Subscribed and sworn to by phone.

Date: __8/21/23__

City and state:  Tulsa, Oklahoma

*Judge's signature*

U.S. Magistrate Judge  Jodi Jayne
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK 2022 BMW, MODEL COUPE, VIN: WBA53AK08N7K12947 AND THE DEVICE LISTED ON ATTACHMENT A, CURRENTLY IN THE POSSESSION OF BELL'S WRECKER SERVICE, LOCATED AT ROUTE 2 BOX 110, HWY 169 & WATOVA, NOWATA, OKLAHOMA 74048 | Case No. 23-MJ-429-PJC |

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Robert Idoux, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search a black in color 2022 BMW, Model Coupe, Vehicle Identification Number WBA53AK08N7K12947, (hereinafter "the Target Vehicle,"), further described in Attachment A, which is currently in law enforcement possession and stored at Bell's Wrecker Service, Route 2 Box 110, Hwy 169 & Watova, Nowata, Oklahoma 74048, and the examination of property-an electronic device-which is currently located inside the Target Vehicle for the particular items of tangible evidence described in Attachment B and the extraction from the property of electronically stored information also described in Attachment B.

2.      I am a Special Agent with the United States Secret Service (USSS) and have been since July 2005. During my tenure with the Secret Service, I have been assigned to investigate violations of federal laws, including violations of Title 18 of the United States Code, and

specifically Title 18, United States Code, Section 471 (Obligations or Securities of United States) and Title 18, United States Code, Section 472 (Uttering Counterfeit Obligations or Securities), as well as other violations of federal law. I received criminal investigative training at the Federal Law Enforcement Training Center in Glynco, Georgia, and at the James J. Rowley Secret Service Training Center in Beltsville, Maryland, pertaining to criminal investigations of counterfeit currency, bank fraud, money laundering, wire fraud, access device fraud, and identity theft. I am an investigative and law enforcement officer of the United States, in that I am empowered by law to conduct investigations and to make arrests for felony offenses, under authority of Title 18, United States Code, Section 3056. I am also a federal law enforcement officer as defined under Rule 41(a)(2)(C) and am authorized to request this search warrant because I am a government agent who is engaged in enforcing federal criminal laws and I am within the category of officers authorized to request such a warrant.

3. I am familiar with the facts and circumstances of this investigation. The facts set forth in this affidavit are based on my personal observations, knowledge obtained from other law enforcement officers, my review of documents related to this investigation, conversations with others who have personal knowledge of the events and circumstances described herein, and a review of open-source information including information available on the Internet. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that evidence of violations of Title 18, United States Code, Section 471 (Obligations or Securities of United States) and Title 18, United States Code, Section 472

2

(Uttering Counterfeit Obligations or Securities) will be located in the electronically stored information described in Attachment B and is recorded on the devices described in Attachment A.

## IDENTIFICATION OF THE VEHICLE AND DEVICE TO BE EXAMINED

5.      The Target Vehicle to be searched is a black in color 2022 BMW, Model Coupe, Vehicle Identification Number WBA53AK08N7K12947, which is currently in the possession and custody of Bell's Wrecker Service located at Route 2 Box 110, Hwy 169 & Watova, Nowata, Oklahoma 74048.

6.      The Device to be searched is listed on Attachment A, and is located inside the Target Vehicle, which is currently in the possession and custody of Bell's Wrecker Service located at Route 2 Box 110, Hwy 169 & Watova, Nowata, Oklahoma 74048.

7.      The applied-for warrant would authorize the search of the Target Vehicle for the particular items of tangible evidence described in Attachment B and the examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.      On July 10, 2023, your Affiant was contacted by Deputy Richard Walters of the Nowata County Sheriff's Office regarding the arrest of two individuals for the Possession of Counterfeit Currency. Deputy Walters reported that on July 9, 2023, at approximately 2:54 am, he initiated a traffic stop on the Target Vehicle for Reckless Driving (traveling 101 miles per hour in a 65 mile per hour zone). As Deputy Walters was speaking to the driver, later identified

3

as Elighjah Conti, he observed that Conti's hands and voice were shaking and that he appeared to be very nervous. Deputy Walters also observed that the right front passenger, later identified as Raheem Davis, was laying in an awkward position, and appeared to be pretending to be asleep. Deputy Walters asked Conti where they were traveling and Conti stated that he and Davis were electricians and were traveling from Tampa, Florida, to a job site in St. Louis, Kansas *(sic)*. As Deputy Walters was speaking to Conti, he observed that Conti had a cellular phone plugged into the center console area, which displayed the GPS information on the touch screen located above the center console. Conti showed Deputy Walters the GPS information which indicated they were approximately 200-250 miles from their destination. Deputy Walters stated that he is from the St. Louis, Missouri, area and knows that St. Louis is approximately 400 miles from Tulsa, Oklahoma. Deputy Walters believed that Conti and Davis were traveling to an area south of Kansas City, Missouri because Kansas City is approximately 270 miles from Tulsa, Oklahoma.

9.      Deputy Walters subsequently obtained Conti's Florida driver's license and Davis's Florida learner's permit and returned to his patrol vehicle where he conducted record checks on the Target Vehicle and both identification cards. The resulting record checks confirmed that the Target Vehicle was registered to Sixt Rent a Car, LLC, and that Conti's driver's license was not valid. The records check also confirmed that Davis did not have a driver's license and that he only had a Florida learner's permit.

10.     Deputy Walters, along with Officer Travis Goodman of the Nowata Police Department, returned to the Target Vehicle where Deputy Walters spoke with Davis and Officer Goodman spoke with Conti. When Davis rolled down his passenger side window, Deputy Walters could smell a very strong odor of marijuana coming from inside the vehicle. Deputy

4

Walters instructed Davis to exit the vehicle where he questioned him about his travel destination. Davis responded that he was an apprentice electrician and was traveling to St. Louis, Kansas *(sic)* for work. When Deputy Walters asked Davis how much marijuana was inside the vehicle, Davis hesitated and mumbled something under his breath before stating he had a medical marijuana card from Florida. When Deputy Walters asked Davis again if there was any marijuana inside the vehicle, Davis reiterated that he had a medical marijuana card, but he was unable to produce the card.

11. As Deputy Walters was speaking to Davis, Officer Goodman approached him and reported smelling an odor of marijuana coming from inside the vehicle. Deputy Walters then approached Conti and instructed him to exit the vehicle. Deputy Walters informed Conti and Davis that he was going to conduct a probable cause search of the vehicle due to the odor of marijuana coming from inside the vehicle. In response, Conti admitted that he and Davis had smoked marijuana a few hours prior to the traffic stop. As Deputy Walters searched the back seat area of the vehicle, he observed that the back seat was loose, so he pulled on the back seat and discovered that several $100.00 bills had been hidden underneath the seat. Deputy Walters subsequently recovered 168 $100.00 bills ($16,800.00) that he identified as counterfeit, along with a vehicle rental jacket from underneath the back seat. The vehicle rental jacket had the following information written on the front: "Naomi" "813-564-8845" "RA-9492860226."

12. Conti and Davis were consequently arrested for Possession of Counterfeit Currency and transported to the Nowata Police Department, 114 S Maple Street, Nowata, Oklahoma 74048, for questioning. The Target Vehicle was subsequently towed to Bell's

Wrecker Service, Route 2 Box 110, Hwy 169 & Watova, Nowata, Oklahoma 74048, where it is currently being held on behalf of the Nowata County Sheriff's Office.

13.     Continuing on July 9, 2023, while at the Nowata Police Department, Deputy Walters verbally read Conti his Miranda rights, which Conti stated he understood, but refused to answer any questions without an attorney present. Deputy Walters then verbally read Davis his Miranda rights, which Davis stated he understood and agreed to answer questions without an attorney present. Davis stated that he left Florida on Friday evening, which indicated he left on Friday, July 7, 2023. Davis stated he and Conti periodically stopped for gas, food, and sleep along their route, but he refused to provide any specific details regarding these locations. Davis stated that the vehicle rental jacket located inside the vehicle was the rental agreement and that the vehicle had been rented by his girlfriend, but he refused to provide her name. When Deputy Walters asked Davis where the rental agreement was located inside the vehicle, Davis stated it should have been in the center console. When Deputy Walters informed Davis that the rental agreement was located underneath the back seat along with 168 counterfeit $100.00 bills, Davis feigned shock and stated that was impossible. When Davis was asked why the rental agreement was located underneath the back seat with 168 counterfeit $100.00 bills, Davis stated he did not know and reiterated that it was impossible that there was any counterfeit money inside the vehicle. Davis then declined to answer any further questions without an attorney present. The interview was promptly terminated, and Conti and Davis were transported to the Nowata County Jail where Conti was charged with Second Degree Forgery, Conspiracy, Reckless Driving, and Operating a Motor Vehicle without a Driver's License while Davis was charged with Second Degree Forgery and Conspiracy.

6

14.     On July 11, 2023, your Affiant conducted a criminal history query on Conti and

Davis and discovered that Davis had an extensive criminal history which included arrests in

Georgia (June 2022), North Carolina (October 2022), and Florida (December 2022) – each of

which involved the Possession of Counterfeit Currency. A further review of Davis's criminal

history confirmed that Davis had previously been sentenced to 5 years' probation in Georgia and

2 years' probation in Florida, both for Possession of Counterfeit Currency.

15.     On July 12, 2023, your Affiant obtained a copy of the incident report from the

Camden County, Georgia, District Attorney's Office regarding Davis's arrest in June 2022 for

the Possession of Counterfeit Currency. The incident report stated that Davis was the driver of a

vehicle that was stopped by the Camden County Sheriff's Office on June 23, 2022, for driving 95

miles per hour in a 70 miles per hour zone. Upon contacting the vehicle's driver (Davis) and

passenger, the deputy could smell a strong odor of marijuana coming from inside the vehicle.

When the deputy asked Davis if he owned the vehicle, Davis stated "his people rented it for

him." A subsequent search of the vehicle resulted in the recovery of several counterfeit $100.00

bills from Davis and his passenger, as well as from other areas within the vehicle, including the

back seat area. Similar to what occurred during the Nowata County incident, the counterfeit

currency recovered from the back seat area of the vehicle had been hidden underneath the back

seat and consisted of 34 counterfeit $100.00 bills and 49 uncut counterfeit $100.00 bills.

16.     On July 20, 2023, your Affiant responded to the Nowata County Sheriff's Office,

229 N Maple Street, Nowata, Oklahoma 74048, where I took possession of the counterfeit

currency and three cellular phones. Your Affiant subsequently examined all 168 $100.00 bills

and confirmed they were counterfeit based on the absence of basic security features such as the

7

watermark and color shifting ink. Also, all 168 $100.00 bills shared one of three unique serial numbers: 51 bills listed serial number LH79819861A, 54 bills listed serial number PK09685413D, and 63 bills listed serial number PA34054442B.

17.     On August 1, 2023, your Affiant entered the aforementioned serial numbers into the United States Secret Service's Counterfeit Tracking Application (CTA), which reported that counterfeit $100.00 bills with these serial numbers were passed on July 5, 2023, at businesses in Ocala, Florida; Williston, Florida; and Gainesville, Florida. Additional counterfeit bills with these serial numbers were passed on July 7, 2023, at a business in Fort Walton Beach, Florida. Ocala, Williston, and Gainesville are located north of Tampa, Florida, while Fort Walton Beach is located west of Ocala, Williston, and Gainesville in the panhandle of Florida. This direction of travel matches Davis's statement to Deputy Walters that he and Conti left Florida on Friday, July 7, 2023. It is believed that Conti and Davis passed additional counterfeit $100.00 bills while traveling from Florida to Oklahoma. It is also believed that Conti and/or Davis had their cellular phones plugged into the center console area of the Target Vehicle during their travel from Florida to Oklahoma, which would enable any GPS information to be stored in the Target Vehicle's infotainment module.

18.     On August 11, 2023, your Affiant obtained a Federal Search and Seizure Warrant from the U.S. District Court, Northern District of Oklahoma, authorizing the search of the Target Vehicle's infotainment module and three cellular phones.

19.     On August 16, 2023, your Affiant went to Bell's Wrecker Service, Route 2 Box 110, Hwy 169 & Watova, Nowata, Oklahoma 74048, where I executed the aforementioned federal search and seizure warrant for the Target Vehicle's infotainment module. While

acquiring the data from the Target Vehicle's infotainment module, I observed several items of evidentiary value located inside the Target Vehicle. These items were located in plain view and consisted of the following:

- One iPhone cellular phone ("the Device") enclosed with a red case located on the right front passenger's seat.

- One Chime Visa debit card located on the right front passenger's seat.

- One Visa credit card in the name of T.H. and ending in account number x8273 located on the right front passenger's seat.

- One Subway restaurant receipt located on the middle console.

20.     Continuing on August 16, 2023, your Affiant contacted Sixt Rent a Car's Corporate Security Department and obtained information that confirmed the Target Vehicle was rented from the Tampa International Airport on July 7, 2023, by a female individual named R.S.N. As discussed earlier, Davis stated to Deputy Walters that his girlfriend rented the Target Vehicle and that he left Florida on July 7, 2023.

21.     As evidenced by the aforementioned items observed inside the Target Vehicle, there is probable cause to believe that there is additional evidence located inside the Target Vehicle that will assist law enforcement in identifying business locations where Conti and Davis passed counterfeit currency during their travel from Florida to Oklahoma, and other information relevant to their criminal violations.

22.     The Device is located inside the Target Vehicle, which is currently in the possession and custody of Bell's Wrecker Service, Route 2 Box 110, Hwy 169 & Watova, Nowata, Oklahoma 74048, where it is currently held on behalf of the Nowata County Sheriff's Office. Therefore, while the United States Secret Service might already have all necessary authority to search the Target Vehicle and examine the Device, I seek this additional warrant out of an abundance of caution to be certain that a search of the Target Vehicle and an examination of the Device will comply with the Fourth Amendment and other applicable laws.

## TECHNICAL TERMS

23.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing

10

and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

11

d.  GPS: A GPS navigation device uses the Global Positioning System to display its
current location. It often contains records the locations where it has been. Some
GPS navigation devices can give a user driving or walking directions to another
location. These devices can contain records of the addresses or locations involved
in such navigation. The Global Positioning System (generally abbreviated
"GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite
contains an extremely accurate clock. Each satellite repeatedly transmits by radio
a mathematical representation of the current time, combined with a special
sequence of numbers. These signals are sent by radio, using specifications that
are publicly available. A GPS antenna on Earth can receive those signals. When
a GPS antenna receives signals from at least four satellites, a computer connected
to that antenna can mathematically calculate the antenna's latitude, longitude, and
sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used
for storing data (such as names, addresses, appointments, or notes) and utilizing
computer programs. Some PDAs also function as wireless communication devices
and are used to access the Internet and send and receive e-mail. PDAs usually
include a memory card or other removable storage media for storing data and a
keyboard and/or touch screen for entering data. Removable storage media include
various types of flash memory cards or miniature hard drives. This removable
storage media can store any digital data. Most PDAs run computer software,
giving them many of the same capabilities as personal computers. For example,
PDA users can work with word-processing documents, spreadsheets, and

12

presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

24.      Based on my training, experience, and research, I know that the Device has varying capabilities that, at least for the listed cellular phone, allows them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

25.      Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

26.      *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how

13

the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.   Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

14

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

27.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

28.     I submit that this affidavit supports probable cause for a search warrant authorizing the search of the Target Vehicle and the examination of the Device described in Attachment A to seek the items described in Attachment B.

29.     I request to be allowed to share this affidavit and the information obtained from this search with any government agency, to include state and local agencies investigating or aiding in the investigation of this case or related matters, and to disclose those materials as necessary to comply with discovery and disclosure obligations in any prosecutions from this matter.

Respectfully submitted,

Robert W. Idoux
Special Agent
United States Secret Service

15

Subscribed and sworn to before me
on August 21ˢᵗ, 2023

UNITED STATES MAGISTRATE JUDGE
Jodi F. Jayne

16

## ATTACHMENT A

### Property to be Searched

The property to be searched is a black in color 2022 BMW, Model Coupe, Vehicle Identification Number WBA53AK08N7K12947, hereinafter "the Target Vehicle," which is currently in the possession and custody of Bell's Wrecker Service located at Route 2 Box 110, Hwy 169 & Watova, Nowata, Oklahoma 74048.

The additional property to be searched consists of one cellular phone listed below, hereinafter "the Device." The Device is currently located inside the Target Vehicle, which is currently in the possession and custody of Bell's Wrecker Service located at Route 2 Box 110, Hwy 169 & Watova, Nowata, Oklahoma 74048.

- Apple iPhone cellular phone enclosed with a red case and no visible identifiers.

This warrant authorizes the search of the Target Vehicle and the forensic examination of the Device for the purpose of identifying the particular items of tangible evidence and the electronically stored information described in Attachment B.

## ATTACHMENT B

### Particular Things to be Seized

1.      All records relating to violations of Title 18, United States Code, Section 471 (Obligations or Securities of United States) and Title 18, United States Code, Section 472 (Uttering Counterfeit Obligations or Securities), those violations involving Elighjah Conti and Raheem Davis and occurring on or after July 7, 2023, including:

   a.  All electronic equipment including, but not limited to, laptop computers, cellular phones, SIM cards, and USB thumb drives;

   b.  All access devices including, but not limited to, credit cards, debit cards, gift cards, Venmo cards, Cash App cards, and prepaid cards;

   c.  All bank records, books, records, checks, receipts, credit card bills, notes, ledgers, and other financial records;

   d.  All records and information related to the coordination, agreement, collaboration, and concerted effort of and with others to violate the criminal violations; and

   e.  All counterfeit U.S. currency in any and all denominations.

2.      All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Section 471 (Obligations or Securities of United States) and Title 18, United States Code, Section 472 (Uttering Counterfeit Obligations or Securities) including:

   a.  Records and information relating to geolocation and travel in furtherance of the criminal violations;

b. Records relating to communication with others as to the criminal violations; including incoming and outgoing voice messages; text messages; multimedia messages; applications that serve to allow parties to communicate; all call logs; secondary phone number accounts, including those derived from Skype, Line 2, Google Voice, and other applications that can assign roaming phone numbers; and other Internet-based communication media;

c. Threatening communications related to the criminal violations;

d. Records relating to documentation or memorialization of the criminal violations, including voice memos, photographs, videos, and other audio and video media, and all EXIF information and metadata attached thereto including device information, geotagging information, and information of the relevant dates to the media;

e. All bank records, checks, credit card bills, account information, and other financial records. Records relating to financial data, to include, bank records, checks, credit card bills, account information, and other financial records, electronically stored records showing proof of residence, proof of storage unit use and/or rentals, additional properties owned or documents reflecting stash houses, real estate transaction documents, rental agreements or documents, as well as automotive sale or purchase or financing documents, electronically stored documents purporting to indicate income or salaries received reflecting employment, hours worked, wages earned, withholdings, W-2 and W-4 forms (blank or executed), state and federal tax returns or documents pertaining to the

2

preparation thereof, electronically stored records showing secret clientele lists, business associates, and diversification of wealth, United States Currency, any other electronically stored tangible items evidencing the obtaining, transfer, secreting, and/or concealment of assets and/or money, electronically stored records, documents, receipts, and/or negotiable instruments which evidence the purchase of negotiable instruments and/or the structuring of currency transactions to avoid the filing of currency transactions reports and/or the laundering of monetary instruments, electronically stored documents evidencing fruits, instrumentalities, monies, records, and notations, associated with the crimes listed above;

f.  Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, saved usernames and passwords, documents, and browsing history; and

g.  All records and information related to the coordination, agreement, collaboration, and concerted effort of and with others to violate the criminal violations.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3